UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC MONTANEZ,

       Plaintiff,

v.

       Case No. 2:21-cv-11645
       District Judge Terrence G. Berg
       Magistrate Judge Kimberly G. Altman

ERNESTO SALINAS, BRANDON
HULL, and AUSTIN MYERS,[1]

       Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 28)**[2]

## I.     Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Eric

Montanez (Montanez), proceeding *pro se*, is suing defendants[3] Ernesto Salinas

(Salinas), Brandon Hull (Hull), and Austin Myers (Myers), who are all employed

---

[1] Defendants' full names are spelled as reflected in their motion.

[2] Upon review of the motion, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

[3] Montanez also originally sued Corrections Officer San Pedro Salinas, Warden Robert Vashaw, Assistant Deputy Wardens Christopher Lamentola and Andrew Dryer, Deputy Warden Becky Carol, Resident Union Manager Wendy Walworth, and Assistant Resident Unit Supervisor John Jacobs. The Court dismissed his claims against them for failure to state a claim. (ECF No. 6).

1

by the Michigan Department of Corrections (MDOC).  After summary dismissal of some of Montanez's claims, (ECF No. 6), his remaining claims are that the remaining defendants retaliated against him in violation of his First Amendment rights during prison cell searches and a misconduct ticket, (ECF No. 1).  Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF No. 16).

Before the Court is defendants' motion for summary judgment.  (ECF No. 28).  Montanez was directed to file a response to the motion by October 25, 2023. (ECF No. 32).  That date has passed without the filing of a response.[4]

For the reasons that follow, the undersigned RECOMMENDS that defendants' motion for summary judgment be GRANTED, and the case be DISMISSED.

## II.    Background

### A.    Factual

On June 30, 2021, Montanez filed his complaint against defendants.  (ECF No. 1).  In broad terms, Montanez claims that defendants retaliated against him in

---

[4] Montanez's response was originally due by April 24, 2023.  (ECF No. 29). However, in August 2023, well after the April due date, Montanez requested an extension of time to September 25, 2023, to respond, (ECF No. 30), which was granted.  On September 22, 2023, Montanez requested a second extension of time, (ECF No. 31), which was granted in part, setting the final due date for his response as October 25, 2023, (ECF No. 32).

violation of his First Amendment rights while he was incarcerated at the St. Louis Correctional Facility (SLF).[5]  The retaliation was in the form of prison cell searches which Montanez says were done to harass him for filing grievances.  He seeks injunctive relief and money damages.  Myers is a former corrections officer at SLF.  Salinas and Hull are both inspectors at SLF.

On March 24, 2020, Montanez filed grievance SLF 20-03-0290-17A, which stated that MDOC staff was harassing him by constantly searching his cell and threatened him with segregation, instructing Montanez to "watch his back."  (ECF No. 28-2, PageID.225, Step III Grievance Report).  Montanez alleged that the searches and threats from staff were in retaliation for grievances he had previously filed, and that he put Warden Robert Vashaw on notice of the retaliation to no avail.  (*Id.*).  The grievance was reviewed by Salinas.  (*Id.*, PageID.226).  Salinas interviewed Montanez, and Montanez informed him that Myers was the officer harassing and threatening him.  (*Id.*).  Salinas then received a written statement from Myers, who admitted to conducting a routine search of Montanez's cell as part of his daily duties but denied threatening him.  (*Id.*).  As a result, Salinas found no evidence to support Montanez's grievance and denied it at Step I.  (*Id.*).  Montanez appealed the grievance through Steps II and III, and the MDOC denied the grievance at those stages.  (*Id.*, PageID.223-224).

---

[5] Montanez is now housed at the Chippewa Correctional Facility.

3

On April 8, 2020, Montanez filed a second grievance, SLF 20-04-0312-17G, complaining that Myers allegedly searched his cell on March 20, 26, and 27 of 2020, leaving his cell in disarray and damaging twenty-six of his store-bought commissary soaps.  (*Id.*, PageID.210).  Myers responded in an interview for the grievance that he did not leave the cell in disarray and only damaged the soap under suspicion of contraband.  (*Id.*, PageID.211).  Based on a lack of corroborating evidence of any policy violation, the grievance was denied through Step III.  (*Id.*, PageID.207-211).

On April 9, 2020, Hull issued Montanez a misconduct ticket for substance abuse indicating that Hull had found Suboxone and marijuana while conducting a routine search of Montanez's cell.  (ECF No. 28-3, PageID.233, Misconduct and Hearing Report).  A hearing was conducted on April 13, 2020, in which Montanez indicated that the drugs were not his, the property that the drugs were found in was his cellmates', and that the ticket did not establish that the drugs were found within his "area of control."  (*Id.*, PageID.231-232).  Montanez maintained that Hull falsified the report in retaliation for the grievances he had previously filed.  (*Id.*). The hearing officer found that there was insufficient evidence to support the charge against Montanez and did not uphold the charge.  (*Id.*).  Specifically, there was no evidence that the Suboxone or marijuana were in Montanez's "area of control" (*Id.*).

Montanez filed his final relevant grievance, SLF 20-04-0365-17B, on April 27, 2020. In it, Montanez stated that Salinas and Hull "had [him] set up," made false allegations against him, planted drugs in his property, and threatened and intimidated him in retaliation for his grievances. (*Id.*, PageID.217, 219). Though the misconduct ticket for having Suboxone and marijuana was dismissed as described above, this grievance was rejected at Steps I through III because there was no violation of policy by MDOC staff in their investigation of Montanez, and drugs were ultimately found in his cell (though not in his area of control). (*Id.*, PageID.214-216, 218).

The grievance record provided by defendants and summarized above represents the relevant facts of the case and, aside from some specific dates, aligns with the allegations in Montanez's complaint. In addition, defendants submit the sworn affidavits of Salinas, Hull, and Myers in support of their motion. In his affidavit, Salinas stated that Montanez was held in administrative segregation only until his misconduct ticket was dismissed at the hearing, and then transferred to a Gradual Reduction Assessment Development (GRAD) Unit upon his release. (ECF No. 28-4, PageID.245). He stated that this unit is for prisoners like Montanez "who are resistant or disruptive when engaging in group activities common in a traditional general population." (*Id.*). This decision was made by the SLF Security Classification Committee, not any of the individual defendants in this

5

case.  (*Id.*).

Hull, in his affidavit, said that he had no knowledge of Montanez's previously filed grievances prior to his search of Montanez's property and issuance of the substance abuse misconduct ticket described above.  (ECF No. 28-6, PageID.351).  Likewise, in his affidavit, Myers stated that he was not aware of any grievance filed by Montanez before his searches of Montanez's cell in March 2020.  (ECF No. 28-7, PageID.355).  He also said that the searches were of randomly selected cells in accordance with SLF policy, other than one search that was based on information from another officer that Montanez was in possession of Suboxone.  (*Id.*).  This was the search that resulted in the destruction of Montanez's soap.  (*Id.*).  Finally, Salinas, Hull, and Myers all declared that they acted in good faith at all times with regard to Montanez.

### B.     Procedural

The case was initially stayed and referred to Court's *Pro Se* Early Mediation Program.  (ECF No. 9).  The case did not settle in mediation so the stay was lifted.  (ECF No. 13).  Defendants then appeared through counsel, (ECF No. 18), and the Court entered a scheduling order, (ECF No. 20).

On March 20, 2023, defendants, after taking Montanez's deposition, filed the instant motion for summary judgment.  (ECF No. 28).  The undersigned entered an order directing Montanez to file a response to the motion by April 24,

2023.  (ECF No. 29).  This date was extended twice by the Court as described

*supra* n.4.  Ultimately, Montanez's response was due October 25, 2023; that date

has passed and Montanez has not filed a response to defendants' motion.

### III.    Montanez's Failure to File a Response

The Sixth Circuit has said that "[e]ven when faced with an unopposed

motion for summary judgment, the district court cannot grant a motion for

summary judgment without first considering supporting evidence and determining

whether the movant has met its burden."  *Byrne v. CSX Transp., Inc.*, 541 F. App'x

672, 675 (2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F.

App'x 374, 380-381 (6th Cir. 2011) ("[A] district court cannot grant summary

judgment in favor of a movant simply because the adverse party has not responded.

The court is required, at a minimum, to examine the movant's motion for summary

judgment to ensure that he has discharged that burden." (quoting *Carver v. Bunch*,

946 F.2d 451, 454-455 (6th Cir. 1991))).  That said, when a motion for summary

judgment is unopposed, "[n]othing in either the Rules or case law supports an

argument that the trial court must conduct its own probing investigation of the

record."  *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992).

"The court may rely on the moving party's unrebutted recitation of the evidence in

reaching a conclusion that facts are uncontroverted and that there is no genuine

issue of material fact."  *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir.

7

2000).

In light of the above, the undersigned will consider the merits of the motion even in the absence of a response.

## IV. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus.*

8

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Montanez is *pro se* does not reduce his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## V.    Analysis

### A.    Parties' Arguments

In his complaint, Montanez asserts First Amendment retaliation claims against the remaining defendants for the cell searches and misconduct ticket described above.  He also asserts Eighth Amendment claims against these defendants for "cruel and unusual punishment" and "deliberate indifference" to his property and well-being, but these claims were dismissed at an earlier stage of the case.  (ECF No. 6).

Defendants argue that Montanez cannot show a causal connection between defendants' acts and his prior grievances and that defendants had legitimate, nonretaliatory bases for their acts.  They also argue that they are entitled to

qualified immunity, as Montanez cannot show a clearly established constitutional or statutory right that defendants violated.

### B.    First Amendment Retaliation

#### 1.    Standard

" '[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, —— U.S. ——, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).   A First Amendment retaliation claim has three elements:

> (1) the plaintiff engaged in protected conduct;
>
> (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and
>
> (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

"An inmate has an undisputed First Amendment right to file grievances against prison officials on his own behalf." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).   Therefore, defendants do not dispute that Montanez was engaged in protected conduct.   They also concede that allegedly retaliatory cell searches and misconduct tickets could constitute adverse actions.   However, they argue that as

to Myers and Hull, Montanez cannot show that there was a causal connection

between those acts and his protected conduct.  Additionally, they argue that as to

all defendants, their actions were justified by nonretaliatory bases and were not

done with a retaliatory motive.  These arguments are addressed in turn below.

2.    Causation

"[T]o prove causation it is not enough to show that an official acted with a

retaliatory motive and that the plaintiff was injured."  *Coleman v. Mohlman*, No.

2:19-cv-13494, 2020 WL 5648352, at *6 (E.D. Mich. Aug. 24, 2020), *report and

recommendation adopted*, 2020 WL 5645715 (E.D. Mich. Sept. 22, 2020) (citing

*Nieves*, 139 S. Ct. at 1722).  "The retaliatory motive must be a 'but-for' cause to

the adverse action."  *Id.*, 2020 WL 5648352, at *6 (citing *Nieves*, 139 S. Ct. at

1722).

Here, Hull and Myers have stated in affidavits that they had no knowledge

of Montanez's previous grievances when they searched his cell or when Hull

issued Montanez a misconduct ticket for possession of Suboxone and marijuana.

(ECF Nos. 28-6, 28-7).  This is also supported by Montanez's deposition

testimony.  (ECF No. 28-5).  Montanez stated that he had not written a grievance

or threatened to write one before Myers's March 20, 26, or 27 cell searches.  (*Id.*,

PageID.273-274).  Montanez also stated that the misconduct ticket, written by

Hull, was in retaliation for his March 24 grievance against an unknown officer that

11

was later determined to be Myers.[6]  (*Id.*, PageID.311-312).  However, Montanez admitted at deposition that "[he doesn't] have evidence that [Hull] knew" about that grievance.  (*Id.*, PageID.316).  He never discussed it with Hull; he "only talked to Salinas" about it.  (*Id.*).

Regarding Myers, there is no reason to believe he would have had notice of any grievance before he conducted his cell searches.  Further, the only evidence of record indicates that the searches were nonretaliatory, with two based on random selection of Montanez's cell and the last based on a tip from another officer that his cell contained drugs.  As to Hull, Montanez admits there is no evidence that Hull knew of any grievances before issuing the misconduct ticket against Montanez. And again, the only evidence of record shows that Hull did not have knowledge. Even assuming there could be a genuine issue as to the protected conduct and adverse action required for a retaliation claim, there is no basis in the record as it stands to find that any of Myers or Hull's actions were caused by Montanez's protected conduct.  " '[T]he defendant must have known about the protected activity in order for it to have motivated the adverse action.' "  *Hamilton v. Starcom Mediavest, Inc.*, 522 F.3d 623, 628 (6th Cir. 2008) (quoting *Thaddeus-X v.*

---

[6] This conflicts with Montanez's previous testimony that he had not written a grievance prior to March 26, 2020, but in any event, that grievance was not received by the MDOC until March 27, 2020, and Myers did not receive notice of the grievance until April 1, 2020.  *See* ECF No. 28-4, PageID.245.

12

*Blatter*, 175 F.3d at 387 n.3).  Therefore, Myers and Hull are entitled to summary judgment on the First Amendment retaliation claims for lack of evidence as to causation.

### 3.     Nonretaliatory Basis

Defendants also argue that the adverse actions complained of had nonretaliatory bases and are therefore not actionable.  Because Myers and Hull are entitled to summary judgment based on causation, as discussed above, the undersigned will address this argument only as it pertains to Salinas.

Even if a plaintiff establishes a prima facie case of retaliation, a defendant is still entitled to summary judgment if he demonstrates that he "would have taken the same action even without the protected activity."  *Thomas v. Eby*, 481 F.3d 434, 441-42 (6th Cir. 2007).  "[B]are allegations of malice" are insufficient to establish such a constitutional claim.  *Thaddeus-X*, 175 F.3d at 399.

According to the MDOC Misconduct Report, Hull conducted a search of Montanez's cell on April 9, 2020, finding Suboxone and marijuana.  (ECF No. 28-3, PageID.233).  An on-site test was conducted on the suspected marijuana, which confirmed that it contained THC.  (*Id.*).  The suspected Suboxone was sent for testing, where nursing supervisor Richard Dodman confirmed the shape, color, and consistency of the drug.  (*Id.*).  He sent a memorandum to Salinas with the result on the same day.  (*Id.*, PageID.235).

13

Defendants' brief states that Hull and Salinas had received confidential information that Montanez was involved with a drug smuggling operation, and searched his cell on April 9, 2020, for that reason.  (ECF No. 28, PageID.196).  It also states that they aver in their affidavits that they would have searched Montanez's property and issued the misconduct ticket whether they had knowledge of his prior grievances or not.  (*Id.*, PageID.196-197).  However, the affidavits themselves contain no statements regarding this nonretaliatory basis for the search.  (ECF Nos. 28-4, 28-6).  Nor does the misconduct report or hearing report indicate that Montanez was suspected of drug smuggling prior to the search.  (ECF No. 28-3).

Based on the undersigned's independent review of the record, there is no indication that Salinas was involved in the search.  At his deposition, Montanez stated that Myers' searches came at the direction of Salinas, that Salinas was informed that the substance found in Montanez's cell was Suboxone, that Montanez was "called out" by Salinas to discuss his grievance against Myers, and that after his misconduct hearing, Salinas wrongly placed Montanez in a restricted unit.  (ECF No. 28-5, PageID.278, 297, 307-309, 317).  However, other than Montanez's unsupported and subjective testimony, there is no evidence that Salinas searched Montanez's cell, ordered the search, or was involved in the misconduct ticket beyond receiving verification of the Suboxone found in

14

Montanez's cell.

The only possible evidence of an adverse action from Salinas is having Montanez placed in a restrictive GRAD Unit after his misconduct ticket was dismissed. However, as set forth in Salinas's affidavit, Salinas did not make the decision to place Montanez in the GRAD Unit; this decision was made by the SLF Security Classification Committee. (ECF No. 28-4, PageID.245). Therefore, the record fails to show a genuine issue of fact as to whether Salinas retaliated against Montanez for filing grievances. Accordingly, Salinas is entitled to summary judgment.

### C.    Qualified Immunity

#### 1.    Standard

Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Created to protect government officials from interference with their official duties, qualified immunity "is an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It gives officials "breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3,

6 (2013) (punctuation modified).  After a defending official initially raises

qualified immunity, the plaintiff bears the burden of showing that the official is not

entitled to qualified immunity.  *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir.

2013).

The Sixth Circuit has generally "use[d] a two-step analysis: (1) viewing the

facts in the light most favorable to the plaintiff, [it] determine[s] whether the

allegations give rise to a constitutional violation; and (2) [it] assess[es] whether the

right was clearly established at the time of the incident."  *Id.*  The steps may be

considered in either order, so "[i]f the court concludes that no constitutional

violation has occurred, there is no need to address whether the alleged right was

clearly established."  *Kinlin v. Kline*, 749 F.3d 573, 577 (6th Cir. 2014).

## 2.    Application

Here, Montanez is unable to satisfy the first qualified immunity step, namely

that his allegations give rise to a constitutional violation.  As explained above,

there is no genuine issue of material fact that would allow his retaliation claims to

go forward against Myers, Hull, or Salinas.  Given Montanez's inability to satisfy

the first step, the Court need not address the second.  *Kinlin*, 749 F.3d at 577.

Furthermore, by failing to respond to defendants' summary judgment motion,

Montanez has not met his burden to show that defendants are not entitled to

qualified immunity.  *Burgess*, 735 F.3d at 472.

16

Thus, Myers, Hull, and Salinas are all entitled to qualified immunity because Montanez did not show a genuine issue as to any clearly established constitutional violation.

VI.    Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion for summary judgment, (ECF No. 28), be GRANTED, and the case be DISMISSED.

Dated: November 15, 2023        s/Kimberly G. Altman
Detroit, Michigan                KIMBERLY G. ALTMAN
                                United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Under Local Rule

17

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"
etc.  Any objection must recite precisely the provision of this Report and
Recommendation to which it pertains.  Not later than 14 days after service of an
objection, the opposing party may file a concise response proportionate to the
objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR
72.1(d).  The response must specifically address each issue raised in the objections,
in the same order, and labeled as "Response to Objection No. 1," "Response to
Objection No. 2," etc.  If the court determines that any objections are without
merit, it may rule without awaiting the response.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon
counsel of record and any unrepresented parties via the Court's ECF System to
their respective email or First Class U.S. mail addresses disclosed on the Notice of
Electronic Filing on November 16, 2023.

s/Marlena Williams
for CAROLYN CIESLA
Case Manager
